UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>RYAN NIGRO,<br><br>Defendant. | 4:24-CR-40047-RAL<br><br><br>OPINION AND ORDER ADOPTING<br>REPORT AND RECOMMENDATION |

Defendant Ryan Nigro filed a Motion to Suppress asserting his Fourth Amendment rights were violated when law enforcement searched his cell phone on two different occasions. Doc. 68. Magistrate Judge Veronica L. Duffy conducted an evidentiary hearing and then recommended denying Nigro's Motion to Suppress. Doc. 74. Nigro now objects to the Report and Recommendation. Doc. 76. This Court overrules Nigro's Objection to the Report and Recommendation for the reasons explained.

I.    **Facts**

In March 2024, Andrew Jacob, a Special Agent for the Department of Homeland Security Investigations (HSI), was posing as a twelve-year-old girl on the social network Reddit. Doc. 73 at 4–7. His persona's name was Bella, and his Reddit username was Pristine_Worker_1146, which was generated by Reddit. Id. at 6; Doc. 72 at 12, 36. On March 11, Bella, using the forum SiouxFallsBateFriends, posted, "Female looking for plans." Doc. 72 at 62; Doc. 73 at 6–7. Later that day, a Reddit user with the username WelcomeReasonable397 (WR397), which the United

States attributes to Nigro, contacted Bella. Doc. 73 at 7, 10. WR397 responded to Bella's post asking if she "still need[ed] plans." Doc. 72 at 2.

Over the next couple days, a text conversation ensued between WR397 and Bella. Id. at 2–32. Bella almost immediately disclosed to WR397 that she was only twelve years old. Id. at 2. WR397 asked Bella for pictures of her in her underwear and of her shirtless. Id. at 3, 9–11, 13–17. WR397 proposed meeting Bella and suggested some sexual activity they could engage in. Id. at 7, 12–13, 18. WR397 also proposed bringing marijuana for Bella to use. Id. at 7. WR397 tried to transfer the conversation to Snapchat twice, but Bella stated that she did not have a Snapchat account. Id. at 7–8. WR397, still wanting Bella to send him a picture of her nipples, proposed sending her a photo of his erect penis if she did so. Id. at 17.

The conversation led to discussions of arrangements to meet in person. See id. WR397 asked Bella where he should pick her up and she responded by suggesting Elmwood Park in Sioux Falls. Id. at 17. Bella stated that she was too young to get pregnant, and WR397 responded that he would bring a condom. Id. at 18–19. WR397 later suggested that Bella could meet him at the Sleep Inn Hotel across the street from Elmwood Park. Id. at 21; Doc. 73 at 9–10.

Around the time of the scheduled meeting, Nigro arrived at the Sleep Inn Hotel and drove around it a few times, and WR397 messaged Bella to enter the parking lot for him to see her. Doc. 72 at 32; Doc. 73 at 10. Nigro went into a convenience store that shares a parking lot with the Sleep Inn Hotel to buy a Pepsi and a Twix. Doc. 72 at 63; Ex. 2 at 19:48:44. Law enforcement officers arrested Nigro as he was leaving the gas station. Doc. 73 at 10–11. Officers located two condoms, some marijuana, and a cell phone upon arresting Nigro. Id. at 11. Law enforcement officers sent a test text from Bella's device to WR397, which appeared on Nigro's phone, to

2

confirm that Nigro was the person using WR397 to communicate with Bella. Id. at 11; Doc. 72 at 34.

Law enforcement officers transported Nigro to the HSI office for a video- and audio-recorded interview. Doc. 73; at 12; see also Ex. 2. Agent Jacob advised Nigro of his Miranda rights and asked if he would waive them. Ex. 2 at 19:36:25. Nigro agreed to speak voluntarily with Agent Jacob and another agent. Id. at 19:36:48.

Nigro gave Agent Jacob basic demographic information, including his cell phone number and passcode to his phone. Id. at 19:37:34–19:39:44. Nigro told Agent Jacob that he had obtained his Reddit account roughly two months ago and that he initiated the chat with Bella on the platform. Id. at 19:42:40–19:43:07. Nigro conceded that Bella told him she was twelve years old. Id. at 19:43:32.

Nigro admitted that he had asked Bella for some explicit photos including topless and nude photos of her. Id. at 19:44:20–30. Agent Jacob asked Nigro if he, after asking Bella for explicit photos, had asked Bella to have sex. Id. at 19:45:42. Nigro admitted, "I'm pretty sure I did in a way." Id. at 19:45:40–19:45:53. Nigro asked Bella "if she had ever had sex" and "if she was okay if [they] did that." Id. at 19:45:53–19:46:01. He admitted to telling Bella about "vulgar sexual things [he] would do to her." Id. at 19:46:04–10. He conceded that they talked about going back to his place to have sex. Id. at 19:46:16. Agent Jacob asked if Nigro and Bella talked about using a condom, and Nigro responded, "We talked about a condom and there is two sitting in the truck." Id. at 19:46:25–40. Agent Jacob asked Nigro if he or Bella had tried to call off the meet-up, which Nigro responded, "No." Id. at 19:49:50–57.

Agent Jacob asked Nigro if he had ever had sex with a twelve-year-old before, and Nigro denied ever doing so. Id. at 19:50:00–10. Nigro claimed that he was going to drive home. Id. at

3

19:50:09–16. Agent Jacob asked Nigro if he watched pornography, which Nigro admitted to doing. Id. at 19:50:23–27. Agent Jacob asked Nigro if he had ever seen child pornography, and Nigro denied it. Id. at 19:50:40–45. Agent Jacob then informed Nigro that he in fact had posed as Bella and that Nigro had been talking to him. Id. at 19:51:31–37. Agent Jacob asked Nigro if he had ever talked to a twelve-year-old girl before, and Nigro responded that he had a twelve-year-old niece. Id. at 19:53:15–20. Agent Jacob asked Nigro if he had ever touched her, and Nigro denied ever doing so. Id. at 19:53:20–30. Agent Jacob asked Nigro if he fantasized about the thought of teaching twelve-year-old girls to have sex, which Nigro denied. Id. at 19:53:50–19:54:13. Nigro told Agent Jacob that he would delete all his dating apps and would not talk sexually with a minor again. Id. at 19:57:16–22.

Agent Jacob asked Nigro if there were any other drugs in the car besides the marijuana that was found, which Nigro denied. Id. at 19:57:42–45. Agent Jacob then asked if the Reddit messages were still on Nigro's phone. Id. at 19:58:43. Nigro stated that he was going to delete the messages and go home before the law enforcement arrived to arrest him.[1] Id. at 19:58:47–55. When asked, Nigro said that he had deleted the photos of himself sent to Bella because he did not want anyone to recognize him walking around town. Id. at 19:59:04–18. Agent Jacob asked Nigro if he had any child pornography on his phone, and Nigro denied it. Id. at 19:59:19–22. Agent Jacob then asked if there was "anything illegal" on Nigro's phone. Id. at 19:59:23. Nigro said no, but there was "maybe some raunchiness just between [him] and some guy friends." Id. at 19:59:25–33. Agent Jacob asked Nigro if he was talking to any other kids on his phone, and Nigro said no. Id. at 19:59:33–40.

---

[1] Nigro objects that this being omitted from the Report and Recommendation renders its factual account to be incomplete. Doc. 76 at 2. Its inclusion here changes little the content and context of Nigro's conversation with Agent Jacob.

4

Agent Jacob had Nigro confirm the passcode to his phone that Nigro had disclosed at the beginning of the interview. Id. at 19:59:40–43. Agent Jacob then said: "I'd like your permission to search your phone and confirm what we've talked about today. Does that work?" Id. at 19:59:46–50. Nigro replied, "Yeah." Id. at 19:59:50. Nigro divulged to Agent Jacob that there were messages to other people on Reddit about hooking up. Id. at 19:59:50–58. Agent Jacob asked Nigro if any of the other people were minors, and Nigro responded, "Not that I can remember—there have been a lot of vague profiles." Id. at 20:00:00–13. Agent Jacob asked Nigro if he had any drugs on him, which Nigro denied. Id. at 20:00:14. Agent Jacob then informed Nigro that he and the other agent were going to leave the room. Id. at 20:00:19. Before Agent Jacob left the room he told Nigro: "This is being recorded. If at any point you want to withdraw consent, just shout to the camera. . . . I am going to take a look at your phone and make sure that what we talked about is really the truth." Id. at 20:00:21–35. Nigro did not withdraw his consent to search the phone at any point during the recording. See Ex. 2.

Agent Jacob and the other agent left the room for approximately thirteen minutes. Id. at 20:02:36–20:15:30. Agent Jacob then informed Nigro that he had not found any child pornography on the phone. Id. at 20:15:34.

Agent Jacob took photos of Nigro's phone to document what he found. Doc. 72 at 33–54. Agent Jacob documented Nigro's Reddit profile: WelcomeReaonsable397 and four conversation threads. Id. at 33–34. The four conversation threads were:

1. The conversation with Agent Jacob posing as Bella and using the username Pristine_Worker_1146;

2. a conversation with someone whose username was ItTookTheHotelKey in which Nigro sent "Let's f**k";

3.  a conversation with someone whose username was Mushroomify in which Nigro sent "Wanna send nudes to each other"; and

4.  a conversation with someone whose username was Fit-Buy-3481 in which the other person sent to Nigro "The 350 for kinky."

Id. at 34.   The last communications with Pristine_Worker_1146, ItTookTheHotelKey, and Mushroomify occurred on March 13, 2024.  Id. at 34–35.  The last communication from the conversation with Fit-Buy-3481 was dated February 26, 2024.  Id.

Agent Jacob stated that the purpose of this manual, cursory search was to identify any other minors that Nigro may have been speaking with and in need of immediate law enforcement attention.  Doc. 73 at 16.  Agent Jacob could not recall if he went through Nigro's Instagram or Snapchat during the initial manual review.  Id.  When asked why Agent Jacob did not just take Nigro's word that there were no other minors that he was speaking to or child pornography on the phone, he responded that in his experience, people in Nigro's position commonly lie when being interviewed by police.  Id. at 40–41.

On March 14, 2024, Nigro made his initial appearance in federal court on a criminal complaint, and attorney David Wheeler was appointed to represent Nigro.  Docs. 1, 6, 8.  After the initial appearance, Wheeler served the United States with a letter requesting discovery.  Doc. 72 at 76–81.  Agent Jacob did not receive any communication from Nigro or his attorney withdrawing his consent to search the phone.  Doc. 73 at 47.  Agent Jacob tagged Nigro's phone into evidence and requested a forensic analyst to conduct a phone extraction on March 14.  Id. at 20.

In April 2025, Agent Jacob applied for and obtained a search warrant to conduct a forensic examination of Nigro's phone.  Doc. 72 at 55–75.  Agent Jacob testified at the evidentiary hearing that he applied for the search warrant because he thought Nigro's "case was headed towards trial,

so [he] wanted to cross [his] T's, dot [his] I's, and just be prepared for trial." Doc. 73 at 21. Agent Jacob testified the forensic examination could find additional information such as metadata and deleted information, which he was incapable of finding during his initial manual review of the phone. Id. at 15. Agent Jacob also noted that the forensic examination would allow him to categorize and tag information. Id.

Agent Jacob provided in the application for the search warrant that he was seeking evidence of "violations of 18 U.S.C. § 2422(b) (coercion and enticement of a minor)." Doc. 72 at 55. Attachment A to the search warrant gave the location to be searched as Nigro's phone with an identifying serial number and passcode. Id. at 58. Attachment B to the search warrant listed the items to be seized from Nigro's phone and limited the timeframe to March 1–31, 2024, for items seized. Id. at 59–60. The items to be seized included "[a]ll visual depictions of minors engaged in sexually explicit conduct," "[a]ll documents . . . pertaining to the possession, receipt, access to, or distribution of child pornography," "[a]ll communications and files with or about potential minors involving sexual topics," all records involving the transmission "of any visual depiction of minors engaged in sexually explicit conduct," and all records and documents indicating ownership or use along with any Internet Service Provider (ISP) and cell phone service providers. Id.

Agent Jacob submitted an affidavit in support of the search warrant, which detailed his credentials and experience in investigating cases involving child pornography and enticement of minors to engage in sexual conduct. Id. at 61–62. Agent Jacob stated that he, through his knowledge and experience, was "familiar with the *modus operandi* of persons involved in the illegal production, distribution, and possession of child pornography and those who engage in enticement of minors using the internet." Id. at 61.

7

Agent Jacob then detailed the facts concerning his undercover operation. Id. at 62–64. Agent Jacob explained that his persona was a twelve-year-old girl, and Nigro engaged in sexually explicit conversation with the persona, including Nigro's interest in engaging in sexual activity, after being told the persona was twelve years old multiple times. Id. at 62–63. Agent Jacob detailed that Nigro told the persona he was coming to meet her, they could smoke marijuana together, and he brought condoms with him. Id. at 63. Agent Jacob recounted that Nigro arrived at the prearranged location and was apprehended by law enforcement. Id. Agent Jacob noted that he recovered Nigro's phone, some marijuana, and two condoms from Nigro's vehicle. Id. Agent Jacob indicated that these events occurred on March 11–13, 2024.[2]

Agent Jacob detailed the interview he conducted with Nigro at the HSI office, including Nigro's waiver of Miranda rights, his admissions, and his giving of the passcode to his phone and oral consent to search the phone. Id. Agent Jacob described his manual review of the phone and noted that he did not find any child pornography or other conversations with minors on the phone. Id. at 63–64. Agent Jacob disclosed the forensic extraction that took place on March 14, 2024, but stated that law enforcement had not searched the extraction yet. Id. at 64. Agent Jacob stated that Nigro had not withdrawn consent, "but this warrant is sought out of an abundance of caution." Id.

Agent Jacob also included two sections regarding the advent of digital technology changing how individuals with a sexual interest in children pursue those interests and characteristics of those individuals. Id. at 67–71. Agent Jacob described how digital devices are the quintessential medium for pursuing these interests and that individuals often store child pornography on their digital devices for many years. Id. Agent Jacob also noted that these individuals correspond with

---

[2] Nigro objected that the Report and Recommendation was incomplete because it should have included the relevant timeframe for the case as March 11–13, 2024. Doc. 76 at 2. That date range is now included in this analysis.

one another using digital devices and keep lists of names, addresses, and telephone numbers for the individuals they communicate with regarding these interests. Id. at 71.

The execution of the search warrant led Agent Jacob to discover additional chats on Instagram, Snapchat, and Reddit, which the United States intends to offer at trial as evidence under Fed. R. Evid. 404(b). Doc. 69 at 4–5. The other chats found from the forensic analysis involve solicitations for sex and marijuana use, which the government asserts are similar in kind to the conversation with Bella. Id.

Nigro seeks to suppress all evidence obtained from his cell phone but concedes that Nigro gave Agent Jacob permission to conduct the initial search of the Reddit account. Doc. 68; Doc. 68-1 at 6. Nigro argues that his consent given to Agent Jacob was limited to searching WR397's Reddit account covering the dates he was communicating with Bella, which were March 11–13, 2024. Doc. 68-1 at 7–9. Nigro also argues that the search warrant issued in this case is overbroad, unparticularized, and should have been limited to only include evidence from March 11–13, 2024, the days during which Bella and Nigro conversed. Id. at 9–13. The United States contends that both searches were valid. Doc. 69. Magistrate Judge Veronica L. Duffy held an evidentiary hearing and issued a Report and Recommendation to deny Nigro's Motion to Suppress. Docs. 70, 73, 74.

Nigro filed an Objection to Report and Recommendation. Doc. 76. Nigro makes two factual objections to the Report and Recommendation contending that it is incomplete, and this Court had included above the information Nigro believed improperly omitted. Id. at 2. Nigro makes three objections to the Report and Recommendation's discussion on the search pursuant to Nigro's consent, arguing that the issue of the consent search is not moot and a reasonable person would not have believed Nigro's consent allowed Agent Jacob to search anything other than Reddit

9

for the dates of March 11–13, 2024. Id. at 3–4. Nigro objects to the Report and Recommendation's conclusions that the search warrant was sufficiently particular and not overbroad for the dates March 1–13, 2024. Id. at 4–8. Lastly, Nigro objects that the Leon good-faith exception is satisfied in this case, arguing that Agent Jacob had no reason to believe either that Nigro was talking to other minors or that Nigro was using any apps other than Reddit to communicate with others about hooking up. Id. at 8.

## II.   Discussion

This Court reviews a report and recommendation under the statutory standards found in 28 U.S.C. § 636(b)(1), which provides in relevant part that "[a] judge of the [district] court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." However, "[i]n the absence of an objection, the district court is not required 'to give any more consideration to the magistrate's report than the court considers appropriate.'" United States v. Murillo-Figueroa, 862 F. Supp. 2d 863, 866 (N.D. Iowa 2012) (quoting Thomas v. Arn, 474 U.S. 140, 150 (1985)). Having reviewed de novo those portions of the Report and Recommendation to which Nigro objects, this Court adopts the Report and Recommendation.

### A. The Search Pursuant to Nigro's Consent

Nigro contends that the United States violated his Fourth Amendment rights by exceeding the given scope of consent when Agent Jacob searched his phone at the HSI office. Doc. 68-1 at 6. Judge Duffy concluded that Agent Jacob did not exceed Nigro's scope of consent to search his phone. Doc. 74 at 16. Judge Duffy reasoned that Nigro gave general consent to search his phone and never withdrew that consent. Id.

"Consensual searches are reasonable under the Fourth Amendment." United States v. Beckmann, 786 F.3d 672, 677–78 (8th Cir. 2015) (citing Florida v. Jimeno, 500 U.S. 248, 250–51 (1991)). "The standard for measuring the scope of a person's consent is 'objective reasonableness,' which asks what the typical, reasonable person would have understood from the exchange between the officer and the suspect." Id. at 678 (quoting Jimeno, 500 U.S. at 251). In analyzing the scope of consent given, courts evaluate "the totality of the circumstances including the interaction between the parties, the purpose of the search, and the circumstantial evidence surrounding the search." Id. at 679. "A suspect may of course delimit as he chooses the scope of the search to which he consents." United States v. Steinmetz, 900 F.3d 595, 600 (8th Cir. 2018) (quoting Jimeno, 500 U.S. at 252). "Where a suspect provides general consent to search, only an act clearly inconsistent with the search, an unambiguous statement, or a combination of both will limit the consent." Id. (quoting Beckmann, 786 F.3d at 679).

Agent Jacob discovered four conversation threads from the consensual search conducted on March 13, 2024. See Doc. 72 at 34–35. These threads include the conversations with Pristine-_Worker_1146, ItTookTheHotelKey, Mushroomify, and Fit-Buy-3481. See id. Nigro concedes that Agent Jacob had consent to search the Reddit app for evidence from the timeframe March 11– 13, 2024. Doc. 68-1 at 6. The conversation threads with all the Reddit users except Fit-Buy-3481 occurred during that time. Therefore, Nigro is only seeking to suppress the conversation thread with Fit-Buy-3481, which occurred on February 26, 2024. Doc. 72 at 34–35.

Judge Duffy concluded that suppression of any evidence found outside of Reddit pursuant to the consensual search was a moot issue because the government only found evidence in the Reddit app during the consensual search. Doc. 74 at 12. Nigro objects that the Reddit thread from February 26, 2024, was outside the scope of consent given. Doc. 76 at 3. Nigro contends that he

and Agent Jacob had the same understanding that the consent given was limited to a search of the Reddit app for the dates March 11–13, 2024, based on the conversation they had.  Doc. 76 at 3. Nigro argues that his consent "was limited by the previous conversation's context."  Id.  Nigro also argues that he "did not have the opportunity to witness Agent Jacob in the process of searching, to know whether his intended consent was being exceeded, or to provide an objection." Id.  Lastly, Nigro argues that Agent Jacob's request for a search warrant over a year later "demonstrates his concern that his search of the cell phone on March 13, 2024[,] exceeded [] Nigro's consent." Id. at 3–4.

Here, Nigro consented to Agent Jacob searching his phone on March 13, 2024.  Ex. 2 at 19:59:50.  The scope of Nigro's consent is determined by evaluating "the totality of the circumstances including the interaction between the parties, the purpose of the search, and the circumstantial evidence surrounding the search." Beckmann, 786 F.3d at 679.  The interaction between the parties included the interview leading up to the search request.  In the interview, Agent Jacob and Nigro discussed numerous topics including Nigro's conversation with Bella regarding sexually explicit conduct and marijuana use, whether Nigro had ever viewed child pornography, whether Nigro had ever had sex with a twelve-year-old before, and whether Nigro was communicating with any other minors.  Ex. 2 at 19:43:05–20:00:00.  Agent Jacob told Nigro that the purpose of the search was to "confirm what we've talked about today." Id. at 19:59:46.

A "typical, reasonable person would have understood from the exchange between the officer and the suspect" that Agent Jacob would be looking for evidence outside of the Reddit app and beyond the span of March 11–13, 2024. Beckmann, 786 F.3d at 678 (citing Jimeno, 500 U.S. at 251).  While it is somewhat beside the point since the only evidence at issue from the consensual search was from Reddit conversations, Agent Jacob asked Nigro if he was communicating with

12

any minors, not if he was communicating with other minors on Reddit specifically. Nigro himself tried to transfer the conversation with Bella from Reddit to Snapchat twice, indicating that Nigro used other apps to communicate with individuals. Nigro also told Agent Jacob during the interview that he would delete all his dating apps on his phone. Therefore, "a typical, reasonable person would have understood[,]" based on the discussion during the interview, that evidence was being sought outside of Reddit. Id.

Agent Jacob had asked Nigro if he had *ever* watched child pornography or had sex with a minor. These questions would lead a "typical, reasonable person" to believe that Agent Jacob, when he asked "to search [Nigro's] phone and confirm what [they] talked about today," would be searching for evidence beyond March 11–13, 2024, to include a Reddit conversation that ended about two weeks prior to that time. Id. Additionally, Nigro gave Agent Jacob general consent to search the phone, by responding "yes" to Agent Jacob's request to search. In this context, where general consent is given, "only an act clearly inconsistent with the search, an unambiguous statement, or a combination of both will limit the consent." Steinmetz, 900 F.3d at 600 (quoting Beckmann, 786 F.3d at 679). Nigro made no unambiguous statement limiting the consent he gave Agent Jacob, which is required to limit his general consent. Id. Agent Jacob informed Nigro that he could withdraw consent at any time by shouting to the camera, yet Nigro did not withdraw his consent.

Nigro granted Agent Jacob permission to search his phone, and did not place any explicit limitation on the scope of the search. Based on the context of the entire interview, Agent Jacob had informed Nigro that he would be looking for child pornography and messages to minors. It is objectively reasonable for Agent Jacob to conclude that the general consent to search Nigro's phone included consent to search apps in which child pornography and communications with

minors may be located, including evidence found beyond the timeframe of March 11–13, 2024. Nigro's objections arguing that the consent of the search was limited to a search of the Reddit app covering the timeframe of March 11–13, 2024, are overruled.

### B. The Search Pursuant to the Search Warrant

Nigro contends that the search warrant used to search his phone was overbroad and unparticularized, rendering it invalid. Doc. 68-1 at 9. Judge Duffy found the search warrant was sufficiently particular and not overbroad for the dates March 1–13, 2024. Doc. 74 at 21–23. Judge Duffy deemed the search warrant overbroad to the extent that it allowed for the use of biometric data to access the phone and covered the dates March 14–31, 2024. Id. at 23. After all, law enforcement already had the passcode to the phone and the phone was in the possession of law enforcement from March 14–31, 2024. Id. Judge Duffy concluded this overbreadth did not violate Nigro's Fourth Amendment rights because this information was never used. Id.

"The Fourth Amendment mandates that 'no Warrants shall issue . . . [unless] particularly describing the place to be searched, and the persons or things to be seized.'" United States v. Shrum, 59 F.4th 968, 973 (8th Cir. 2023) (alteration in original) (quoting U.S. Const. amend. IV). "The Fourth Amendment by its terms require particularity in the warrant, not in the supporting documents[,]" unless "the warrant uses appropriate words of incorporation, and [] the supporting document accompanies the warrant." Groh v. Ramirez, 540 U.S. 551, 557–58 (2004) (citation omitted).

"The particularity requirement prohibits officers from conducting general, exploratory rummaging of a person's belongings and demands that the warrant be sufficiently definite to enable the searching officers to identify the property authorized to be seized." Shrum, 59 F.4th at 973 (cleaned up and citations omitted). A court "must consider 'the total circumstances

surrounding the case'" to determine "[w]hether a warrant fails the particularity requirement." Id. (quoting United States v. Fiorito, 640 F.3d 338, 346 (8th Cir. 2011)).  "The particularity requirement is 'one of practical accuracy rather than of hypertechnicality.'" Id. (quoting United States v. Sigillito, 759 F.3d 913, 923 (8th Cir. 2014)).

The Eighth Circuit has acknowledged that "[t]here is an intuitive relationship between acts such as child molestation or enticement and possession of child pornography." United States v. Colbert, 605 F.3d 573, 578 (8th Cir. 2010) ("For individuals seeking to obtain sexual gratification by abusing children, possession of child pornography may very well be a logical precursor to physical interaction with a child: the relative ease with which child pornography may be obtained on the internet might make it a simpler and less detectable way of satisfying pedophilic desires."). "[E]vidence suggests that pedophiles use child pornography to seduce other children into sexual activity." Id. (quoting Osborne v. Ohio, 495 U.S. 103, 111 (1990)).  Thus, the Eighth Circuit has recognized "that [a defendant's] attempt to entice a child was a factor that the judicial officer reasonably could have considered in determining whether [defendant] likely possessed child pornography." Id.

Nigro relies on United States v. Winn, an Illinois district court case, to argue the search warrant was overbroad and unparticularized. See 79 F. Supp. 3d 904 (S.D. Ill. 2015).  In Winn, as part of an investigation into a report of a man using his cell phone to take photos or videos of underage girls at a public pool without their permission, Winn consented to police seizure of his cell phone. Id. at 909–10.  An officer applied for a search warrant, using a template provided by the local state's attorney's office, to search the cell phone for

> any or all files contained on said cell phone and its SIM Card or SD Card to include but not limited to the calendar, phonebook, contacts, SMS messages, MMS messages, emails, pictures, videos, images, ringtones, audio files, all call logs, installed application data, GPS information, WIFI information, internet history and

usage, any system files on phone, SIM Card, or SD Card, or any data contained in the cell phone, SIM Card or SD Card to include deleted space.

Id. at 910–11.  A state court judge signed the search warrant and child pornography was found on the cell phone.  Id. at 911.  Winn moved to suppress the evidence obtained from his cell phone for several reasons, including that the search warrant was overbroad and lacked sufficient particularity.  Id. at 912.  The United States District Court for the Southern District of Illinois agreed on this basis.  Id. at 918–22.  The Winn court reasoned "[w]ith regard to the objects of the search, . . . the warrant was facially overbroad, exceeded the probable cause to support it, and was not as particular as the circumstances would allow" because "the police did not have probable cause to believe that *everything* on the phone was evidence of the crime of public indecency."  Id. at 919.  The court noted that the affidavit did not contain any basis to believe that data other than photos and videos could be evidence of the crime; therefore, the court concluded "the warrant was overbroad, because it allowed the police to search for and seize broad swaths of data without probable cause to believe it constituted evidence of public indecency."  Id. at 920.

Nigro contends this Court should follow Winn and hold that the search warrant was overbroad and unparticularized.  See Doc. 76 at 4–8.  Nigro argues that his three-day sexually explicit conversation with Bella is analogous to the conduct in Winn because of the short time span and narrow investigation into that matter.  Id. at 7–8.  Nigro argues that he "was not chatting with other minors that law enforcement was aware of; nor did they have any evidence to support such a notion."  Id. at 8.

Winn is distinguishable for multiple reasons.  First, the search warrant for Nigro's phone was not nearly as broad as the search warrant in Winn.  Here, the search warrant allowed for "[a]ll visual depictions of minors engaged in sexually explicit conduct," "[a]ll documents . . . pertaining to the possession, receipt, access to, or distribution of child pornography," "[a]ll communications

16

and files with or about potential minors involving sexual topics," all records involving the transmission "of any visual depiction of minors engaged in sexually explicit conduct," and all records and documents indicating ownership or use along with ISP and cell phone service providers. Doc. 72 at 59–60. All categories of data here are limited to that involving child pornography, enticement of a minor, and ownership of the device. This warrant did not allow for any and all files including calendar, ringtones, GPS information, and Wi-Fi information like the warrant did in <u>Winn</u>. 79 F. Supp. 3d at 911, 919 ("This particular template authorized the seizure of virtually every piece of data that could conceivably be found on the phone.").

Second, the nature of the investigation in Nigro's case and the reasons given for the search differ from <u>Winn</u>. Unlike in <u>Winn</u>, where the investigation was for public indecency, Nigro was being investigated for enticement of a minor. The Eighth Circuit recognizes attempting to entice children as a factor for a judicial officer to consider in determining whether a defendant is likely to possess child pornography. <u>Colbert</u>, 605 F.3d at 578. Here, Agent Jacob, in his affidavit, supported why information beyond just the singular chat was sought. Doc. 72 at 62–64, 68–72. In <u>Winn</u>, the supporting documents did not detail why information other than photos and videos were sought. 79 F. Supp. 3d at 919–20 ("The complaint did not offer any basis—such as facts learned during the investigation or Detective Lambert's training and expertise—to believe that the calendar, phonebook, contacts, SMS messages, MMS messages, emails, ringtones, audio files, all call logs, installed application data, GPS information, WIFI information, internet history and usage, or system files were connected with Winn's act of public indecency."). Unlike in <u>Winn</u>, the search warrant for Nigro's phone was not overbroad because it allowed law enforcement to search for child pornography and documents relating to child pornography. <u>See Colbert</u>, 605 F.3d at 578.

Third, the warrant here was for a limited timeframe—March 1–31, 2024—unlike in <u>Winn</u>. <u>See Winn</u>, 79 F. Supp. 3d at 921. This Court agrees with Judge Duffy that the warrant was overbroad for the dates March 14–31, 2024, because law enforcement possessed the phone during those two weeks. <u>See</u> Doc. 74 at 23. However, the affidavit in support of the warrant supports and establishes probable cause to search the phone for the period of ten days before Nigro had reached out to Bella. Doc. 72 at 67–71. The warrant in <u>Winn</u>, on the other hand, had no limiting timeframe. 79 F. Supp. 3d at 921 ("Most importantly, the warrant should have specified the relevant timeframe."). Therefore, Nigro's objections that the search warrant was overbroad for the dates March 1–13, 2024, relying on <u>Winn</u>, are overruled.

Judge Duffy's conclusion that the warrant was overbroad for the dates March 14–31, 2024,[3] and for the use of biometric data to access the phone does not justify suppression of evidence obtained in the search. <u>See</u> Doc. 74 at 23. As Judge Duffy concluded and as the record supports, no evidence was obtained from the date range March 14–31, 2024, and the biometric data was not used. <u>Id.</u> Therefore, this overbreadth is "'severable,' and items seized pursuant to valid portions of the warrant need not be suppressed." <u>United States v. Timely</u>, 443 F.3d 615, 622 (8th Cir. 2006) (citing <u>United States v. Fitzgerald</u>, 724 F.2d 633, 637 (8th Cir. 1983) (en banc)). <u>See also United States v. Coleman</u>, 909 F.3d 925, 931 (8th Cir. 2018) (finding evidence obtained pursuant to valid portions of search warrant need not be suppressed); <u>United States v. Krasaway</u>, 881 F.2d 550, 553 (8th Cir. 1989) (holding that the defendant's motion to suppress was properly denied because

---

[3] The United States proffered no explanation to justify searching Nigro's phone for information after the date law enforcement seized the phone. Under different circumstances, a warrant tailored, for instance, to search for messages received in the days following the seizure of the phone by Reddit from accounts ItTookTheHotelKey, Mushroomify, and Fit-Buy-3481 might assist in identifying those users and if any were minors.

challenged portions of a warrant were "sufficiently specific," or alternatively, because the actual items seized fell within the valid portions of the warrant).

### C. <u>Leon</u> Good Faith

Judge Duffy reasoned that even if the search warrant was invalid, the additional information that Agent Jacob had was sufficient to "establish that a reasonably well-trained officer would have believed in objective good faith that the search warrant was valid and that the <u>Leon</u> good-faith exception to the exclusionary rule applies in this case." Doc. 74 at 27. Nigro objects to this conclusion arguing that Agent Jacob "had no information that [] Nigro had engaged in any crime or inappropriate chats with minors." Doc. 76 at 8. Nigro concludes that the officers "did not rely on objective good faith to execute the search warrant." <u>Id.</u>

"Under the [<u>Leon</u>] good-faith exception, 'evidence seized pursuant to a search warrant issued by a magistrate that is later determined to be invalid, will not be suppressed if the executing officer's reliance upon the warrant was objectively reasonable.'" <u>United States v. Ross</u>, 487 F.3d 1120, 1122 (8th Cir. 2007) (quoting <u>United States v. Proell</u>, 485 F.3d 427, 430 (8th Cir. 2007)); <u>see also</u> <u>United States v. Leon</u>, 468 U.S. 897, 921 (1984).

> In assessing whether the officer relied in good faith on the validity of a warrant, we consider the totality of the circumstances, including any information known to the officer but not included in the affidavit, and we confine our inquiry to the objectively ascertainable question whether a reasonably well trained officer would have known that the search was illegal despite the [issuing judge's] authorization.

<u>United States v. Hudspeth</u>, 525 F.3d 667, 676 (8th Cir. 2008) (alteration in original) (quoting <u>United States v. Grant</u>, 490 F.3d 627, 632 (8th Cir. 2007)).

This Court agrees with Judge Duffy that even if the search warrant was invalid, the <u>Leon</u> good-faith exception applies in this case. <u>See</u> Doc. 74 at 27. Nigro contends that Agent Jacob had no information to believe that Nigro was talking to other minors. Doc. 76 at 8. Agent Jacob,

however, knew of the sexually explicit conversation that Nigro had with Agent Jacob posing as Bella. Doc. 72 at 62–63. Agent Jacob knew that Nigro asked Bella for nude photos, discussed engaging in sexual activity, and attempted to transfer the conversation to Snapchat twice. Id. Additionally, Nigro told Agent Jacob during the interview that he would delete his other dating apps. Ex. 2 at 19:57:16–22. Agent Jacob could surmise that Nigro had a tendency to engage in sexually explicit conversation with minors, that Nigro attempted to engage in these types of conversations through apps other than Reddit, and that Nigro had other dating apps on his phone. These facts, in addition to the facts stated in the affidavit, are sufficient to establish that a reasonably well-trained officer would have believed in objective good faith that the search warrant was valid. See Grant, 490 F.3d at 633–34 (finding Leon good-faith exception applied where officer relied solely on computer technician's statement that a computer contained child pornography, not adult pornography); Ross, 487 F.3d at 1123–24 (finding Leon good-faith exception applied to search of home pursuant to search warrant notwithstanding that the affidavit did not describe any drug-related activity at the home except defendant's truck being parked at the house earlier in the day).

## III. Conclusion

For the reasons stated above, it is hereby

ORDERED that Defendant's Objection to the Report and Recommendation, Doc. 76, is overruled. It is further

ORDERED that the Report and Recommendation, Doc. 74, is adopted. It is finally

ORDERED that Defendant's Motion to Suppress, Doc. 68, is denied.

20

DATED this _21st_ day of January, 2026.

BY THE COURT:

ROBERTO A. LANGE
CHIEF JUDGE